COMMONWEALTH vs. ARTHUR POISSON.

Bristol.     November 21, 1892. — January 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Examination of Juror — Statute — Discretion of Presiding Justice — Argument to Jury — Return of Jury for Instructions.*

Under the Pub. Sts. c. 170, § 35, the examination of jurors as to interest or bias beyond the inquiries provided for expressly by the statute, was left to the discretion of the presiding judge, which discretion is not taken away by the St. of 1887, c. 149, providing that the examination may be made by the parties or their attorneys under the direction of court; and the discretion is exercised wisely by not going beyond the usual questions unless something appears which makes it proper to go further.

The district attorney said to the jury in his argument in a criminal case, " The grand jury ask you to find the defendant guilty." The counsel for the defendant asked the judge to stop the district attorney, but the judge refused. It did not appear that the district attorney pressed the argument further after he was interrupted. *Held,* that as, so far as it appeared, the jury at the proper time were instructed to disregard such an argument, or were given some other instructions embracing that instruction and equally favorable to the defendant, the mere failure to stop the district attorney was not a ground for a new trial.

After the jury had had a criminal case under consideration for several hours they came into court. The judge asked the foreman if they desired further instructions, and the foreman said, " This man here [pointing with his finger to a juryman near him] would like to have further instructions." The juryman asked a question, which the judge answered, and the latter then read to the jury the instructions given in the case of *Commonwealth* v. *Tuey,* 8 Cush. 1, 2. The defendant requested the judge to direct a mistrial on account of the action of the foreman; but the judge declined so to do. *Held,* that the defendant had no ground of exception.

INDICTMENT in six counts. The fourth count charged the defendant with unlawfully exposing and keeping for sale intoxicating liquors at Fall River. The sixth count charged the defendant with keeping a disorderly house at Fall River.

At the trial in the Superior Court, before *Braley,* J., upon these two counts alone, the defendant, before the jury was sworn and after they had been called, requested the judge to put to them the following questions :

" 1. Have you any prejudice or bias against the sale of liquor that would prevent you from giving the same weight to the testimony of a person engaged in the sale of liquor, or who has been

engaged in such business, that you would give to any other witness, so far as the occupation or trade of a witness would affect his credibility?

" 2. Have you any bias or prejudice against a person accused of the unlawful sale of liquor, and against whom some evidence has been offered tending to prove the offence, that would prevent you from giving to the testimony of the accused the same weight that you would give to any other person accused of an offence, and against whom some evidence had been offered? "

The judge declined to put these questions, but did ask if they had expressed or formed an opinion as to the guilt or innocence of the accused, or were sensible of any bias or prejudice for or against him.

In his closing argument to the jury, the district attorney said : " The grand jury ask you to find that this man [referring to defendant] kept a disorderly house, and kept liquors there for sale on February 10." Thereupon the defendant's counsel duly requested the judge not to permit that line of argument, and to instruct the jury at the proper time that they were not to consider that the grand jury asked them to find the defendant guilty, as stated by the district attorney.

The judge refused to stop the district attorney in his argument.

After the jury had had the case under consideration for several hours, they came into court for further instructions.

The judge asked the foreman if the jury desired further instructions. The foreman then arose in his place and said : " This man here [pointing with his finger to a juryman near him] would like to have further instructions." The juryman then asked a question of the judge, to which a response was made defining what in law would constitute a disorderly house. The judge then read to the jury the instructions given by Mr. Justice Hoar, as reported in the case of *Commonwealth* v. *Tuey,* 8 Cush. 1, 2. The defendant, after the judge had concluded the instructions, requested the judge to direct a mistrial on account of the action of the foreman of the jury ; but the judge declined so to do.

The jury returned a verdict of guilty on both counts ; and the defendant alleged exceptions.

*J. W. Cummings*, for the defendant.

*C. N. Harris*, Second Assistant Attorney General, for the Commonwealth, did not care to be heard.

HOLMES, J. 1. Under Pub. Sts. c. 170, § 35, (Gen. Sts. c. 132, § 29, Rev. Sts. c. 95, § 27,) the examination of jurors as to interest or bias in the cause, etc., beyond the inquiries provided for expressly by the statute, was left to the discretion of the presiding judge. *Commonwealth* v. *Burroughs*, 145 Mass. 242, 244. *Commonwealth* v. *Thrasher*, 11 Gray, 55. *Commonwealth* v. *Gee*, 6 Cush. 174, 177. See *Commonwealth* v. *Trefethen*, *ante*, 180. It would be unfortunate if all control of such an examination should be taken from the court, and we do not interpret the St. of 1887, c. 149, as having that effect. On the contrary, the power given by the St. of 1887 to the parties to make the examination provided for by the Public Statutes is, in terms, to make it " under the direction of the court." There is still a discretion, and, in our opinion, it is exercised wisely by not going beyond the usual questions, unless something appears which makes it proper to go further.

The questions which the defendant wanted to have asked went beyond those suggested by the statute, without any manifest reason. But for the dictum in *Robinson* v. *Randall*, 82 Ill. 521, 522, we should have said that affirmative answers to them had no tendency to show that the juror did not stand indifferent in the sense of the statute, or at most bore upon that issue, which is the only one, in a very remote way. If a juror should admit that he regarded as more or less discredited a witness who, so far as the evidence had gone at the moment of his testifying, appeared probably to be a liquor seller, the admission would go only to the juror's general opinions concerning circumstances which affect the value of evidence. It is to get the benefit of such opinions formed by men of the world that jurors are summoned. It seems to us that the existence of such a one as we have supposed would not prevent the juror from standing indifferent in this particular case. See *Chandler* v. *Ruebelt*, 83 Ind. 139, 143; *Shields* v. *State*, 95 Ind. 299.

2. The second exception seems to be confined to the refusal of the court to stop the district attorney in his argument after he had said to the jury, " The grand jury ask you to find the

defendant guilty." If, as is suggested, although not stated by the bill of exceptions, this expression was used by way of argument, and not as a mere mode of stating that the defendant was indicted, it warranted interruption, and it deserved rebuke. But, so far as appears, the jury at the proper time were instructed to disregard such an argument, or were given some other instructions embracing that, and equally favorable to the defendant. The mere failure to stop the district attorney is not a ground for a new trial. It does not appear that he pressed the argument further after he was interrupted. See *Commonwealth* v. *Worcester*, 141 Mass. 58; *Commonwealth* v. *Cunningham*, 104 Mass. 545; *Commonwealth* v. *Byce*, 8 Gray, 461.

3. The unexpected conduct of the foreman in pointing out the one juryman who did not agree with the rest, and who wanted further instructions, might have had the effect to bring an improper pressure to bear upon him, but that would depend a good deal upon the individual thus pointed out. The presiding justice was the best judge whether it did any harm in this particular case. If he had given the defendant a new trial, his decision would not have been open to criticism, and we cannot say that he was wrong in refusing one. The juryman was not deterred from putting the question which he wanted answered. We must assume that the judge was satisfied that his constancy would not be affected unduly by the subsequent reading of the familiar passage from *Commonwealth* v. *Tuey*, 8 Cush. 1, 2. The case is very like *Commonwealth* v. *Whalen*, 16 Gray, 25, 26, 27.

*Exceptions overruled.*