<hr />

[Crim. No. 40.   In Bank.—December 9, 1898.]

THE PEOPLE, Respondent, v. WILLIAM BARRON M'KAY, Appellant.

CRIMINAL LAW—CHALLENGE TO PANEL—SERVICE OF VENIRE.—An objection to the panel which goes merely to the mode of service of the venire, and does not show that the sheriff intentionally omitted to summon any juror drawn, and that the jurors drawn were not all in attendance, constitutes no statutory ground for a challenge to the panel.

ID.—HOMICIDE—PREVIOUS ALTERCATION WITH THIRD PERSON—EVIDENCE—SEIZURE OF PISTOL—EXCITED STATE OF MIND.—Upon the trial of a defendant charged with killing one who interfered with his attempt to shoot a third person, with whom he had had a previous altercation, evidence of his declarations and acts when he, immediately after such altercation, seized a pistol belonging to a witness, and rushed back with it, tending to show his excitement, and that he took it without leave of the witness, and against his attempt to prevent it, is admissible for the purpose of showing the state of mind of the defendant at the time of the homicide.

ID.—PREVIOUS RELATIONS WITH THIRD PERSON.—Evidence of the previous relations between the defendant, and the third person with whom he had the previous altercation, though not tending to prove malice, is admissible to enable the jury to understand the immediate quarrel in which the homicide occurred.

ID.—OFFER OF DISTRICT ATTORNEY TO PROVE MALICE—MISCONDUCT—GOOD FAITH.—An offer by the district attorney to prove that the defendant had an abandoned and malignant heart, as tending to prove that the homicide was the offspring of malice, does not constitute misconduct, if made in good faith, and not without authority to support it, though correctly rejected.

ID.—ABSTRACT INSTRUCTION—DEFINITION OF CHARACTER.—An abstract instruction, requested by the defendant, giving an elaborate definition of character, which can serve no useful purpose, may be rejected without injury to the defendant.

ID.—REQUEST BY JURY FOR FURTHER INSTRUCTIONS—ACTION OF COURT.— Upon a request by the jury for further instructions, it is immaterial whether the court confined itself to the points upon which information was asked or not, provided the language used, though not the best that could have been used, was not such that the jury could have been misled.

ID.—EVIDENCE IN MITIGATION OF PUNISHMENT—DISCRETION.—The court has discretion to determine whether it will hear evidence in mitigation of punishment, and it is proper for it to refuse to hear incompetent evidence offered for that purpose.

APPEAL from a judgment of the Superior Court of San Mateo County and from an order denying a new trial. George H. Buck, Judge.

The facts are stated in the opinion of the court.

George C. Ross, for appellant.

W. F. Fitzgerald, Attorney General, and C. M. Post, Deputy Attorney General, for Respondent.

TEMPLE, J.—The defendant was convicted of the crime of manslaughter, and appeals from the judgment and from an order refusing a new trial.

1. The first point made on the appeal arises upon the challenge to the panel. The objection goes merely to the mode of service of the venire. It is not shown that the sheriff intentionally omitted to summon any juror drawn. In fact, it does not appear that the jurors drawn were not all in attendance. This objection constitutes no ground of challenge to the panel. The challenge

to the panel formed under the special venire is not based upon any statutory ground.

2. It is contended that the court erred in admitting the evidence of the witness Gerke, as to what defendant said and did in procuring the pistol with which it is charged that he committed the homicide.

Defendant was charged with killing Robert Curry. There was evidence tending to show that a few minutes before the homicide defendant had had an altercation with one Barron, who had beaten him; also, that he went immediately to Gerke's house, which was near by, caught up a pistol belonging to Gerke and rushed back with it, had presented it in a threatening manner toward Barron, when Curry interfered and attempted to take the pistol from defendant, and in the scuffle the pistol was discharged and Curry was killed. The theory of the prosecution was that defendant procured the pistol for the purpose of killing Barron, and when Curry interfered to protect Barron defendant killed him to get rid of his interference.

The evidence had reference to an attempt on the part of Gerke to prevent defendant from taking the pistol, and remarks of defendant, tending to show excitement, and that he took the weapon without leave and against the protest of Gerke. I think the evidence was proper, as tending to show the state of mind of the defendant.

3. I discover nothing in the evidence in regard to the previous relations of defendant and Barron which tended to prove malice, but it was admissible to enable the jury to understand the immediate quarrel in which the homicide occurred.

4. We cannot say that the district attorney was acting in bad faith when he offered to prove that defendant had an abandoned and malignant heart, as tending to prove that the homicide was the offspring of malice, and not of a sudden heat of passion or an accident. I think the ruling of the court rejecting the offered evidence was correct, but had a different ruling been made authority sustaining the action of the court would have been found in the celebrated case of *United States v. Guiteau*, 1 Mackay, 498, 47 Am. Rep. 247, where much evidence was admitted which merely tended to show that Guiteau had a malicious and malignant disposition.

5. No injury was done to defendant by the refusal to give the elaborate and abstract definition of character offered by the defendant. It could have served no useful purpose.

6. It does not matter whether the court, when the jury asked for further instructions, confined itself to the points upon which information was asked or not. The language in which these instructions were given is not in all respects the best that might have been used, but the jury could not have been misled. The attention of the jury was called to the instructions already given upon the subject. In these, at the request of defendant, the court had elaborately distinguished murder from manslaughter. The jury announced that they were agreed that the killing was not premeditated, and asked for a definition of manslaughter. The court referred to the former instruction and added: "Whether such felonious homicide would be murder or manslaughter depends," etc. In the instruction already given, prepared by counsel for defendant, it had said, "Whether the unlawful killing of a human being is murder or manslaughter," et cetera. Evidently the phrase, "such felonious homicide," was general, and did not apply specially to the case in hand. It was the equivalent to the expression already used, to which reference was made in the same sentence, and the jury could not have been misled.

It is evident, also, that the jury desired to have restated the difference between murder and manslaughter. The defense was not that the homicide was in necessary self-defense or that it was excusable, but that it was accidental. The announcement of the jury showed that they were agreed that it was not murder in the first degree, and implied that some of the jury were doubtful whether it was murder or manslaughter. If they had concluded that the killing was accidental they would not have cared for a definition of manslaughter. All the elements of excusable or justifiable homicide had, however, been fully stated in other instructions.

7. It is discretionary with the court whether it will hear evidence in mitigation of the punishment. (Pen. Code, sec. 1203.)

The evidence offered was incompetent, and the court properly refused to hear it.

The judgment and order are confirmed.

Henshaw, J., McFarland, J., Van Fleet, J. and Garoutte, J., concurred.