MORRIS LONDON *vs.* BAY STATE STREET RAILWAY COMPANY.

Plymouth.    November 13, 14, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Argument of counsel, Conduct of trial, Judge's charge, Exceptions: curing error.    *Negligence,* Rules of defendant corporation.    *Evidence,* Competency, Failure to call witness, Presumptions and burden of proof.

In an action against a street railway corporation for personal injuries sustained by a collision, with a motor truck, of an open electric car of the defendant, on the running board of which the plaintiff was being transported as a passenger, it is improper for the plaintiff's counsel in his closing argument to the jury to ask the jury whether they expect to be treated, when they go on cars of the defendant's line, the way that the plaintiff was treated by the defendant, to tell them that they are making the law for the county in which the case is being tried, that the defendant is a corporation having the power to take their land by right of eminent domain on which to lay its tracks and that in consideration of those privileges it is charged with certain duties toward its passengers.

In the case above described the defendant's counsel in an intermission in the plaintiff's closing argument excepted to the statements of the plaintiff's counsel above described and asked the presiding judge to instruct the jury to disregard them.    In his charge to the jury the judge said, " During the argument · of the counsel for the plaintiff he made certain statements to which the counsel for the defendant rose and objected.    One was with reference to the right of the railway company to take your land by eminent domain; the other was with respect to your making law in these cases for Plymouth County.    It is sufficient to say, perhaps, as to both of those that neither statement has any bearing on any issue that you are trying."    *Held,* that the impropriety of the argument of the plaintiff's counsel, to which the defendant excepted, was not merely that the statements of the counsel were wrong, which they were, but that the use of them was an appeal to the jury to act in violation of their duty as jurors, and that the instruction of the judge was not an instruction, as it should have been, to disregard this improper argument, so that the judge's charge did not cure the error and the defendant's exception must be sustained.

In the same case it was *held* that the defendant's counsel, by taking an exception to the improper portion of the argument and asking the judge to instruct the jury to disregard it, had saved the defendant's right to have its exception sustained unless the judge cured the error that had been committed, which he did not do.

In an action·against a street railway corporation for personal injuries sustained by reason of a collision, when the plaintiff was a passenger on a car of the defendant, the plaintiff was allowed to introduce in evidence certain rules of the defendant, but there was no evidence of any violation of any of these rules. The judge instructed the jury as follows: "If you find they did not violate

any of the rules, of course the rules are of no consequence in this case. If you find that they did violate one or more of them and such disobedience contributed to the accident, that would be evidence tending to show negligence, for which the defendant is liable." *Held,* that the rules in question should not have been admitted in evidence, and that it was error for the judge to deal with them as he did in his charge.

In the case above described the defendant's conductor, who at the time of the accident was in charge of the car in question, at a former trial of the case had been called and examined as a witness by the plaintiff and also had been called and examined by the defendant. At the later trial he was in court but neither the plaintiff nor the defendant called him as a witness. The defendant asked the presiding judge to instruct the jury that, "Under the circumstances, and upon all the evidence in this case, the jury cannot properly draw any inference against this defendant from its failure to call as a witness . . . the conductor of the car involved in the accident." The judge refused to give this instruction. *Held,* that the instruction requested by the defendant should have been given.

ToRT, against the Bay State Street Railway Company, for personal injuries sustained by the plaintiff on the afternoon of September 13, 1913, when he was travelling as a passenger on the running board of an open car of the defendant on Main Street in the town of Randolph and the car came into collision with a motor truck owned by the Hazen-Brown Company. Writ dated August 1; 1914.

In the Superior Court the case was tried before *Sisk,* J. The jury returned a verdict for the plaintiff in the sum of $5,000; and the defendant alleged exceptions, which are described in the opinion, including those relating to the closing argument of the counsel then in charge of the plaintiff's case.

The following rules of the defendant, which are referred to in the opinion, were offered in evidence by the plaintiff together with other rules and were admitted by the judge, subject to the defendant's exception:

"Rule 19.   Charge of Car.   The Conductor has charge of the car; the Motorman is under his direction and will obey his orders so far as reasonable and consistent with the rules. The Motorman is directly responsible for the handling and condition of the equipment. Neither Conductor nor Motorman shall leave the car before reaching its destination, except in emergency, and must then notify the other of such intended action and give reason for so doing. Misapplication of this rule will lead to immediate dismissal. Both Conductor and Motorman must remain on car while

on duty whether 'laying off' or not. Under no circumstances shall both Conductor and Motorman be away from the car at the same time unless properly relieved; in the absence of the Conductor the Motorman is held responsible for the car and its management and must notify the Conductor of the number of passengers who may have entered in his absence."

"Rule 45. Caution — Street Obstruction. Motormen must seasonably notify conductors in approaching any temporary obstruction such as the wooden horses, barrels, iron bars, lanterns, etc., used in protecting street work, vehicles disabled close to track, etc., which are dangerous to passengers on running board. Conductors must warn passengers in a manner which they will understand of all such obstructions as well as any permanent dangers, such as draw-bridges, trees, etc."

"Rule 158. Whistles. Whistles must not be blown (except in emergency to avoid accidents) within the settled portions of cities or towns. On approaching street crossings, or dangerous places elsewhere, two long and two short blasts will constitute the signal. Unnecessary blowing of the whistle is prohibited."

"Rule 163. Running Down Grades. In descending grades, Motormen must allow car to coast, using power as little as possible and must be very careful to always keep car under control, never allowing it to run down grade faster than is consistent with absolute safety to passengers and property of the Company."

"Rule 171. Warnings. Motormen should warn all persons in the street especially those who are liable to come from rear of standing cars, who may be put in danger by progress of the car, and not run too close to them before doing so."

Among other requests the defendant asked the judge to give to the jury the following instruction:

"Under the circumstances, and upon all the evidence in this case, the jury cannot properly draw any inference against this defendant from its failure to call as a witness Herbert A. Bumpus, the conductor of the car involved in the accident."

The judge refused to give this instruction, and in his charge referred to this matter, and also to the failure to call another witness, as follows:

"In this connection, I want to say, with reference to certain comment in argument that has been made by the plaintiff's

counsel on the failure of the railway company to call Herbert A.
Bumpus, the conductor of the car in question at the time of the
accident, and also its failure to call Dr. Paine, that it appeared
that at the former trial of these cases, Bumpus was called as a
witness by the plaintiff and examined, and was likewise called
by the defendant and examined. At the present trial neither the
plaintiff nor the defendant called him as a witness, though he was
in court during the trial, as counsel now inform me.

"As to the comment as to the failure to call Dr. Paine, are you
satisfied that he was called as a witness, and testified, for the
defendant railway company at the former trial, upon the evidence?
And if he did, and was not called here as a witness by the railway
company, what inference, if any, should be drawn from the failure
to call him? Did the plaintiff have an opportunity to call him?
Generally, where testimony is within the exclusive control and
knowledge of one party and not the other, and the party who
could produce such testimony, does not do so, under such circum-
stances the jury might infer that such testimony, if produced,
would be unfavorable to the party who had it in his exclusive
control or knowledge. But where it is not within the exclusive
control and knowledge of such party to offer such testimony,
then no inference could be properly drawn against such party
that such testimony, if produced, would be hostile. It is for
the jury to say, under all the circumstances, what the fair infer-
ence is, if any, to be drawn against the company in not calling
that witness."

During the trial the defendant's counsel stated that Bumpus
was in the employ of the company at the time of that trial.

*Asa P. French,* (*J. W. French* with him,) for the defendant.

*W. R. Sears,* (*J. M. Hoy* with him,) for the plaintiff.

LORING, J. In his closing argument the plaintiff's counsel said,
"If you gentlemen sitting here in this panel go to your jury room
and come out and say that Morris London is to blame for his acci-
dent, — well, you make the law of Plymouth County, and you
make it the law of Plymouth County that a man who is doing
what Morris London was doing is not a prudent man. Was he
not doing what you would do? Was he not doing what you would
have done time and time again? I will pass the question. That's
all there is to it. . . . And on the evidence as it has been sub-

mitted and as I have tried to epitomize it here, on the question of speed, on the matter of speed, gong and whistle, is there any question in your mind at all but that this collision occurred without the slightest warning, and occurred when the car was going full tilt down that hill, or after it got down the hill? Is there any question about it in your mind at all? If that is the way the accident occurred, is there any question about the propriety of the conduct of the men who were running that car? Is there any question about it at all? Do you expect that when you go out and get on a Bay State car, that you are going to be treated that way? That is the test. You make the law for Plymouth County in this case. Do you think that that is the kind of treatment that you ought to get when you get on one of these Bay State cars on the facts in the case? Do you expect an electric car, filled as this was, to be run down without any warning given to people ahead, or anything else, and to collide with a truck on the road? . . . Now, there is just one thing that I want to emphasize which I haven't spoken to you at all about, and that is the difference between the duty which is owed by the Bay State Street Railway Company to Mr. London and the duty owed by the auto truck to Mr. London. They are entirely different, altogether different. The Bay State Street Railway Company has certain franchises from the State; it can take by eminent domain, your own property, and lay out its tracks through them; and, in consideration of those privileges and its professions, it is charged with certain duties, and one of them is to transport safely its passengers; and the duty that it owes is the highest degree of care consistent with the practical operation of its business."

The defendant's attorney during an intermission which occurred after this portion of the plaintiff's closing argument had been made said to the presiding judge: "I desire to except to, and ask to have the jury instructed to disregard" the statements made in the three portions of the plaintiff's argument set forth above. In his charge to the jury the presiding judge said: "During the argument of the counsel for the plaintiff he made certain statements to which the counsel for the defendant rose and objected. One was with reference to the right of the railway company to take your land by eminent domain; the other was with respect to your making law in these cases for Plymouth County. It is

sufficient to say, perhaps, as to both of those that neither statement has any bearing on any issue that you are trying."

The plaintiff has contended that the statements contained in these three parts of the plaintiff's closing argument were correct statements of law. We are of opinion that they were not. It is the duty of the jury under the rules of law laid down by the judge to decide on the evidence presented the questions of fact in issue between the parties. Putting it at the highest, it is their duty to apply the law to the evidence. In no sense can it be said that it is their duty "to make the law," much less to "make the law" for one county. The law enforced by the courts of Massachusetts is the law of the Commonwealth applicable in each and every county alike. There is no law of one county as distinguished from the law of another county. It is not true that the reason why the defendant had to exercise "the highest degree of care consistent with the practical operation of its business" was because it had a right to "take by eminent domain, your own property, and lay out its tracks through them." The defendant had to exercise the "highest degree of care consistent with the practical operation of its business" because it was a common carrier. The same duty rests on all common carriers. For example, it rests on a common carrier who operates a stage coach or a "jitney" omnibus on a public highway. But the real grievance of the defendant is not that these statements of the plaintiff's counsel were wrong. Its real grievance is that this argument was an appeal to the jury to act in violation of their duty as jurors. It is the duty of jurors to decide under the rules of law laid down by the judge what on the evidence presented to them are the true facts of the case on trial. It is their duty to decide the issue submitted to them impartially as between party and party. What they have to do is, laying aside their likes, their dislikes and their prejudices, laying aside what they may conceive to be for their personal advantage or disadvantage, to decide the issue on trial impartially between party and party. The argument of the plaintiff's counsel in the case at bar was an appeal to the jury to take into consideration their interest as prospective passengers on the defendant railway and to decide the case so as to secure for themselves in the future the treatment they wished as passengers on that railway. The latter part of this argument was a covert appeal to the jury to make this great and powerful corpora-

tion (so powerful that it had the right of eminent domain) feel the jury's power in the case at bar. Or at any rate the argument might well have been taken by the jury to mean that. This argument as a whole called for rigorous and emphatic action on the part of the judge. The burden was upon him to make certain that the jury would disregard this appeal to them to violate their duty. The action taken by the presiding judge fell short of this. What the judge said was: "It is sufficient to say, perhaps, as to both of those that neither statement has any bearing on any issue that you are trying." That is not an instruction that the jury should disregard this argument. Nor is it an instruction equally favorable to the defendant. In *Commonwealth* v. *Poisson*, 157 Mass. 510, and *Bennett* v. *Susser*, 191 Mass. 329, relied upon by the plaintiff's counsel himself, it was laid down by this court that it is the duty of the presiding judge to instruct the jury to disregard an improper argument.

The plaintiff's next contention is that the defendant has not saved his rights; that if the defendant's counsel was not satisfied with the subsequent statement made by the judge it was his duty to tell the judge so and to except to his refusal to change what he then said. We are of opinion that this contention is without foundation. The defendant had in terms taken an exception to this argument of the plaintiff's counsel. He also asked the judge at that time "to have the jury instructed to disregard the statement." When he had taken an exception to the argument he had reserved his rights unless the judge cured the error which had been committed. The error in the argument to which the defendant took an exception was not cured by what the judge said. His rights were saved by the exception taken.

The case will have to go back for a new trial, and we will briefly consider questions argued here which are likely to arise there.

There was no evidence of any violation of rules 19, 45, 158, 163 and 171, (printed on pages 481, 482,) and they should not have been admitted in evidence. Since there was no evidence of the violation of these rules, it was error for the judge to deal with them as he did in his charge by instructing the jury that, "If you find they did not violate any of the rules, of course the rules are of no consequence in this case. If you find that they did violate one or more of them and such disobedience contributed to the accident,

that would be evidence tending to show negligence, for which the defendant is liable."

The jury should have been instructed that, "Under the circumstances, and upon all the evidence in this case, the jury cannot properly draw any inference against this defendant from its failure to call as a witness Herbert A. Bumpus, the conductor of the car involved in the accident." This case comes within *Fitzpatrick* v. *Boston Elevated Railway*, 223 Mass. 475, and not within *Little* v. *Massachusetts Northeastern Street Railway*, 229 Mass. 244.

There was evidence warranting a finding that the plaintiff was in the exercise of due care. *Eldredge* v. *Boston Elevated Railway*, 203 Mass. 582. *Dalton* v. *Boston Elevated Railway*, 217 Mass. 66. *Walsh* v. *Boston Elevated Railway*, 222 Mass. 275, where the cases are collected. It is not necessary to consider the effect of the answers given by the plaintiff as to the particular operations of his mind called forth by the cross-examination of the learned counsel for the defendant. It is not likely that this will be repeated at the coming trial. We do not intimate that the result of these answers was to deprive the plaintiff of the right to go to the jury on the question of his due care.

*Exceptions sustained.*